**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**CARLOS C. CHARLES,**

$\qquad\qquad\qquad$ **Petitioner,**

$\qquad$ **V.**

$\qquad\qquad\qquad\qquad\qquad\qquad$ **05-CV-274**

**UNITED STATES OF AMERICA,**

$\qquad\qquad\qquad$ **Respondent.**
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**


**DECISION & ORDER**

**I.  INTRODUCTION**

$\qquad$ Carlos C. Charles (hereinafter "Petitioner") instituted the instant action pursuant to 28

U.S.C. § 2255 challenging his criminal conviction and sentence.  For the reasons that follow, his

petition seeking a writ of habeas corpus is denied and the action is dismissed.


**II.      BACKGROUND**

$\qquad$ On June 26, 1995, Petitioner and approximately forty other people were indicted for various

narcotics, weapons, and conspiracy charges arising out of their participation in what has been

referred to as the Joyner Organization. See United States v. Joyner, 201 F.3d 61, 66-68 (2d Cir.

2000)("Joyner I"). After an eight week trial, Petitioner was convicted of engaging in a continuing

criminal enterprise (CCE) in violation of 21 U.S.C. § 848(a); a drug trafficking conspiracy in

1

violation of 21 U.S.C. § 846; possession with intent to distribute and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1); and carrying a firearm during and in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c). He was sentenced to a term of imprisonment of 392 months.

Petitioner and other defendants appealed their convictions and sentences to the United States Court of Appeals for the Second Circuit ("Second Circuit"). The Second Circuit upheld Petitioner's convictions on the CCE, drug possession and distribution, and one of four Section 924(c) counts, but vacated his convictions for drug conspiracy and three Section 924(c) counts. Joyner I, 201 F.3d at 67 & 76-77.  Petitioner's claims of ineffective assistance of counsel were not examined, holding instead that those issues should be raised on collateral attack. Id. at 78 (citing Billy-Eko v. United States, 8 F.3d 111 (2d Cir. 1993)). All remaining grounds for appeal were dismissed. Petitioner and several co-defendants then petitioned the Second Circuit for re-argument, at which time the circuit court considered and rejected additional arguments. See United States v. Joyner, 313 F.3d 40, 44-45 (2d Cir. 2002)("Joyner II"). The Supreme Court denied Charles's petition for certiorari on February 23, 2004. See Charles v. United States, 540 U.S. 1201 (2004).  On April 7, 2004, this Court entered an Amended Judgment sentencing Petitioner to a term of imprisonment of: 332 months on the CCE count (count 1); 240 months on the drug possession and distribution counts (counts 23-28) to be served concurrently with count 1; and 60 months on the remaining Section 924(c) count (count 45) to be served consecutively with the other counts. See dkt. # 1951 in 95-CR-232.  The instant action followed.  Affording Petitioner the deference due a *pro se* litigant, see McPherson v. Coombe, 174 F.3d 276, 280 (2d Cir. 1999)(Pro se pleadings should be read liberally and interpreted to "raise the strongest arguments they suggest."), the Court is able to decipher several claims from the Petition

and supporting papers.  These are addressed *seriatim*.


## III. DISCUSSION

### A. Ineffective Assistance of Trial Counsel

Petitioner first alleges that his attorney was constitutionally ineffective in several ways during the trial, as discussed more fully below.

### 1. Standard

In order to state a Sixth Amendment claim for ineffective assistance of counsel, Petitioner must prove: "(1) counsel's conduct 'fell below an objective standard of reasonableness,' and (2) this incompetence caused prejudice to ... defendant." United States v. Guevara, 277 F.3d 111, 127 (2d Cir. 2001)(quoting Strickland v. Washington, 466 U.S. 668, 687-88 (1984)).

In analyzing the first prong of Strickland, the Court "must indulge in a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689.  Given this presumption, "the burden rests on the accused to demonstrate a constitutional violation." United States v. Cronic, 466 U.S. 648, 658 (1984).  "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. The Court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland, 466 U.S. at 690.  The standard is one of objective reasonableness, and "[t]he first prong of the Strickland test is not satisfied merely by showing that counsel employed poor strategy or made a wrong decision. Instead, it must be shown that counsel 'made errors so serious that counsel was not functioning as the

'counsel' guaranteed ... by the Sixth Amendment.'" <u>Jackson v. Moscicki</u>, 2000 WL 511642, at * 7

(S.D.N.Y. April 27, 2000)(quoting <u>Strickland</u>, 466 U.S. at 687); <u>see</u> <u>Kimmelman v. Morrison</u>, 477

U.S. 365, 381 (1985)(Petitioner bears the burden of proving "that counsel's representation was

unreasonable under prevailing professional norms and that the challenged action was not sound

strategy.")(citing <u>Strickland</u>, 466 U.S. at 688-89).   Furthermore, in evaluating attorney performance

"every effort [must] be made to reconstruct the circumstances of counsel's challenged conduct, and

to evaluate the conduct from counsel's perspective at the time."  <u>Strickland</u>, 466 U.S. at 694.

To satisfy the second prong of <u>Strickland</u>, Petitioner "must show that there is a reasonable

probability that, but for counsel's unprofessional errors, the result of the proceeding would have

been different." <u>Strickland</u>, 466 U.S. at 694. "A reasonable probability is a probability sufficient to

undermine confidence in the outcome." <u>Id.</u> at 694.

### 2.  Failure to Prepare or Present A Vigorous Defense

Petitioner's ineffective assistance of counsel arguments consist primarily of second guessing

of the attorneys's performance, and assertions, based wholly upon speculation, that if counsel had

done something more or called other witnesses, the results would have been different. For instance,

Petitioner argues that "defense counsel failed to go the scene of defendant's alleged crimes to locate

potential witnesses and/or interview potential witnesses whose names had been given to him by

petitioner, or hire an investigator to track down these potential witnesses."  Pet. Mem. L. p. 4.

Given the expansive nature of the charges against Petitioner, including participation in a long term

CCE and a drug trafficking conspiracy, it is unclear what crime scenes Petitioner asserts that

counsel failed to visit, or what potential witnesses he failed to interview.  Such broad, generalized

claims are insufficient to sustain a claim of ineffective assistance of counsel under the first prong of

the Strickland test. See Sheedy v. United States, 1997 WL 394664 at *9 (N.D.N.Y. 1997)(A

petitioner's "[b]ald assertion that counsel should have conducted a more thorough pretrial

investigation fails to overcome the presumption that counsel acted reasonably.")(citing Strickland,

466 U.S. at 689); see also Sirotnikov  v. United States, 1998 WL 770557, at *4 (S.D.N.Y. Nov.,

1998)("Petitioner's naked assertion that his trial counsel 'failed to adequately perform pretrial

research and investigation,' does not establish ineffective assistance of counsel.");  Vasquez v.

United States, 1997 WL 148812, at *1-2 (S.D.N.Y. Mar. 28, 1997)("[P]etitioner's allegations with

regard to alleged counsel errors in pre-trial preparation and investigation and trial advocacy are

'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source,'

and, accordingly,  ...  '[t]he vague and unsubstantiated nature of the claims' defeated petitioner's

claim of ineffective assistance of counsel....");  Parnes v. United States, 1995 WL 758805, at *3

(S.D.N.Y. Dec. 21, 1995)("[V]ague allegations do not permit the Court to conclude that the alleged

errors of Petitioner's counsel fell below 'prevailing professional norms' ....  Accordingly, the Court

rejects Petitioner's claim that he received ineffective assistance of counsel.");  Matura v. United

States, 875 F. Supp. 235, 237-38 (S.D.N.Y. 1995)(mere conclusory allegations that counsel was

ineffective fails "to establish that his counsel's performance was deficient [and]  ....  fails to

overcome the presumption [under Strickland] that counsel acted reasonably ....");  Hartley v.

Senkowski, 1992 WL 58766, at *2 (E.D.N.Y. Mar. 18, 1992)("In light of this demanding

[Strickland] standard, petitioner's vague and conclusory allegations that counsel did not prepare for

trial or object to errors carry very little weight.").

　　　　Petitioner also asserts that counsel was constitutionally ineffective for failing to investigate

and present an alibi defense based upon a motel receipt (Pet. Ex. 1).  This appears to be a dubious

proposition because the motel receipt is nothing more than a stub containing little information and indicates, at most, that the Petitioner was at a motel in Jamaica, New York at some time on April 12, 1994.[1]  The Second Superseding Indictment charges, *inter alia*, that on April 12, 1994, Petitioner, or one of 13 alleged aider and abetters, distributed cocaine in Sheion's bar in Binghamton, New York.  See 2nd Sup. Indictment, Count 27.  Apart from the fact that the motel receipt does not exclude the possibility that Petitioner drove to Binghamton after registering at the motel, Petitioner presents a sales receipt that he claims is from a jewelry store in Johnson City, New York. See Pet. ex. 1.  According to Petitioner, the sales receipt establishes that he purchased jewelry from this store on April 12, 1994.  Johnson City is less than a 10 minute drive from Binghamton. Thus, Petitioner's own evidence establishes that he was in the Binghamton area at some point on April 12, 1994. Given this evidence,  it was not below an objective standard of reasonableness for his attorney to decline to pursue this purported alibi defense from the motel receipt. See United States v. Romero, 1993 WL 485677, at *7 (S.D.N.Y. Nov. 22, 1993)(An attorney is under no obligation to investigate every line of defense a defendant suggests, and, instead, "an attorney is required only to make a reasonable decision about whether to investigate a particular line of defense based upon the overall defense strategy."), aff'd, 54 F.3d 56 (2d Cir. 1995); Munoz v. Keane, 777 F. Supp. 282, 288-89 (S.D.N.Y. 1991)("Given the overwhelming evidence that [petitioner] participated in the drug transaction at issue, it was reasonable for defense counsel to conclude, as a strategic matter, that presenting testimony of the alleged alibi witnesses would be damaging to [petitioner's] case."), aff'd sub nom Linares v. Senkowski, 964 F.2d 1295 (2d Cir. 1992); Sanchez v. Scully, 613 F. Supp. 1065, 1068 & n. 5 (S.D.N.Y. 1985)(denying habeas relief for failure to call

---

[1]The motel receipt contains only the date "4/12," the year is not written on it.

6

alibi witness; decision whether to present an alibi witness was a tactical choice which did not rise to the level of a constitutional violation).

Petitioner also claims constitutional ineffectiveness based upon counsel's failure to: (a) more vigorously argue for suppression of evidence seized pursuant to a search warrant; (b) cross-examine Joyner based upon a letter Joyner wrote to Petitioner,[2] (b) use certain evidence obtained during discovery, or (c) renegotiate a previously-rejected plea deal.[3] These arguments amount to nothing more than an after-the-fact second-guessing of counsel's strategy choices. See Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994). Merely pointing out what (Petitioner felt) was wrong with the defense does not overcome the strong "presumption that counsel's conduct 'might be considered sound trial strategy'" falling "within the wide range of reasonable professional assistance." Cox v. Donnelly, 387 F.3d 193, 198 (2d Cir. 2004)(quoting Strickland, 466 U.S. at 689).

Further, given the overwhelming evidence of Petitioner's guilt, United States v. Sapia, 2002 WL 620483, at *4 (S.D.N.Y. April 18, 2002),[4] he cannot satisfy the second prong of the Strickland test with regard to any of counsel's alleged failures. See Strickland, 466 U.S. at 697 ("If it is easier

---

[2] Petitioner argues that counsel was constitutionally ineffective for failing to cross-examine Joyner with a letter Joyner wrote to Petitioner. The letter, however, contains information that is not favorable to Petitioner. In this regard, the letter reads: "Remember when we was in our state case and you said the deck was stack[ed]. Trust me kid, not like this deck shit is stack[ed] to the ceiling they got mad wires and pictures ... " and, "Listen I'm writing trying to pull your coat so save all the bullshit because you go to trial your ass is out." Dkt. #1, Ex. H. The jury could have reasonably concluded that Joyner was writing to Petitioner with the friendly advice that the evidence was so strong that Petitioner should avoid trial and instead enter a plea deal. Given this, a decision by counsel to not use the letter appears to be based upon sound trial strategy.

[3] Petitioner believes that counsel's failure to "renegotiate the March 11, 1996 plea offer" was prejudicial because "even if it was likely to be unsuccessful, counsel should have known that the negotiation of a plea bargain at this point in a case, in which the evidence was strongly against a movant , was a viable alternative." Pet. Mot. p. 23 -24.

[4] In deciding a Section 2255 petition without a hearing, "a district court may rely on its own familiarity with the case and deny the 2255 motion where the motion lacks 'meritorious allegations that can be established by competent evidence.'" United States v. Sapia, 2002 WL 620483 at *4 (quoting Stokes v. United States, 2001 WL 29997, at *2 (S.D.N.Y. Jan. 9, 2001)).

to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect

will often be so, that course should be followed."); United States v. O'Neil, 118 F.3d 65, 72-73 (2d

Cir. 1997). Indeed, as the Second Circuit noted:

> The evidence of Charles's participation in Joyner's drug organization is
> overwhelming.  Joyner and 18 former coconspirators testified that Charles
> participated in Joyner's drug trafficking organization.  Murzi, a police informant,
> testified that he purchased drugs from Charles at Sheion's, and a tape recording of
> his conversation with Charles was played for the jury.  The jury also heard evidence
> of Charles's guilty plea to a state drug offense that occurred at Sheion's in June 1994.

Joyner I, 201 F.3d at 76.

Petitioner's conclusory claims of unpreparedness or failed tactical decisions are insufficient

to sustain his burden on the second prong of the Strickland test. See Slevin v. United States, 1999

WL 549010 at *5 (S.D.N.Y. July 28, 1999)("Petitioner's conclusory allegations that counsel evinced

'a general lack of preparation' do not demonstrate that absent the alleged errors, the outcome of the

trial would have been different. Petitioner has not elaborated on how counsel's alleged general lack

of preparation prejudiced the outcome of his trial. Accordingly, such purported lack of preparation

cannot be deemed ineffective assistance of counsel."), aff'd, 234 F.3d 1263 (2d Cir. 2000);

### 3. Failure to Call Certain Witnesses

Similarly, Petitioner's conclusory claims of ineffectiveness based upon uncalled witnesses

are insufficient to sustain a Sixth Amendment claim.  "The decision whether to call any witnesses

on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort

engaged in by defense attorneys in almost every trial." United States v. Nersesian, 824 F.2d 1294,

1321 (2d Cir.), cert denied 484 U.S. 958 (1987). Thus, an attorney's decision "whether to call

specific witnesses--even ones that might offer exculpatory evidence--is ordinarily not viewed as a

8

lapse in professional representation." United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000); see

United States v. Schmidt, 105 F.3d 82, 83 (2d Cir. 1997)(The decision of whether or not to call a

particular witness is a matter of trial strategy which the courts will generally not second guess.); Lou

v. Mantello, 2001 WL 1152817, at *10 (E.D.N.Y. Sept. 25, 2001)("Habeas claims based on

complaints of uncalled witnesses are not favored, because the presentation of testimonial evidence is

a matter of trial strategy and because allegations of what a witness would have testified [to] are

largely speculative.'")(interior quotation and citation omitted).   Accordingly, the claims fails on the

first prong of the Strickland test.  Further, Petitioner has provided no evidence of what the witnesses

would have testified to if called,[5] and, therefore,  the claims fail under the second prong of the

Strickland test.

_____

[5] Petitioner asserts that trial counsel was constitutionally ineffective for failing to subpoena a witness named Tattoo Pitman. Pitman was shot by a handgun fired inside the bar where Petitioner sold drugs. Petitioner was not charged with shooting Pitman, but was charged with using the handgun that was later found in the bathroom of the bar. Petitioner contends that if his attorney had subpoenaed Pitman and asked him one question: "Did my client shoot you?," the results of the case would have been different. There is no affidavit from Pitman, and Petitioner does not assert what Pitman's purported testimony would have been. The Court presumes that implicit in Petitioner's argument is the belief that if Pitman had testified, he would have testified that he was not shot by Petitioner.  Assuming that the testimony would have been presented as Petitioner now apparently believes, it would not changed the outcome of the trial.  This testimony, if presented, would have related to one of the vacated § 924(c) firearm charges.  Since these charges were vacated, and since there was abundance of evidence supporting the conviction on the charges upon which Petitioner was sentenced (see text infra), he cannot demonstrate prejudice from this purported deficiency in trial counsel's representation.

Similarly, Petitioner alleges in wholly conclusory fashion that if counsel had interviewed and called a witness named Timothy Platt, Platt would have provided exculpatory testimony about the events of March 24, 1994. Apart from the wholly speculative nature of the claim, the claim fails on the second prong of the Strickland test. In the light of the overwhelming evidence of Petitioner's guilt under the CCE count, the testimony from Platt (if in fact it would have been as Petitioner claims) would not have changed the outcome of the case.

The same conclusion must be reached with regard to Petitioner's argument that  "[c]ounsel was ineffective when he failed to investigate potential witnesses at Tri-Vending and counsel's failure to investigate was prejudicial to the defense because it prevented the jury from hearing testimony, which would have disputed the credibility of the cooperating witness." Pet. Mem. L. p. 10.  Conspicuously absent from this allegation is any showing of what testimony the witnesses from Tri-Vending would have offered in Petitioner's defense, or how this testimony would have led to a different trial result.

## 4.  Mistaken Belief as to Admissibility of FBI Form 302s

Petitioner next asserts that trial counsel was constitutionally ineffective because he mistakenly believed (and told Petitioner before trial) that he could offer the Government's cooperating witnesses' debriefing statements (FBI Form 302s) into evidence as a way to impeach these witnesses.  At trial, however, the Court ruled that these documents were inadmissible.

Assuming that counsel advised Petitioner that the 302s were admissible, the claim nevertheless fails under both prongs of the Strickland test. First, Form 302 statements are considered witness statements in certain circumstances. See United States v. Scotti, 47 F.3d 1237, 1249 (2d Cir. 1995).[6]  Thus, and in light of the fact that in the underlying case the Form 302s were produced ostensibly as witness statements, it cannot be said that it was below an objective standard of reasonableness for counsel to have believed that they would be admissible at trial.

Second, the claim fails under the second prong of the Strickland test. Assuming, *arguendo*, that counsel correctly recognized that the Form 302s would *not* come into evidence *in the underlying trial* (and advised the Petitioner of this), the results of the trial would have been no

---

[6] In Scotti, the Second Circuit held:

The [FBI Form 302] notes may have been discoverable as a statement by []one of the government's witnesses.  In the circumstances of this case, [the defendant] would have been entitled to discovery of the notes if either of two conditions obtained: (1) [the Government's witness] "adopted or approved" [the FBI agent's] notes as his own statement, 18 U.S.C. § 3500(e)(1);  Fed. R. Crim. P. 26(f)(1);  or (2) the notes were a substantially verbatim recital of [the Government's witness's] words, even if the interview was not automatically recorded, 18 U.S.C. § 3500(e)(2);  Fed. R. Crim. P. 26(f)(2);  Palermo v. United States, 360 U.S. 343, 351-53, 79 S.Ct. 1217, 1224-25, 3 L.Ed.2d 1287 (1959)(interpreting 18 U.S.C. § 3500(e)(2)).  Even if not an exact recording, the notes would be considered a substantially verbatim recital of the witness's statement if they "could fairly be deemed to reflect fully and without distortion what had been said to the government agent" and thus be used to impeach the witness's testimony at trial. Id. at 352, 79 S.Ct. at 1224;  United States v. Aviles, 337 F.2d 552, 556 (2d Cir. 1964), cert. denied, 380 U.S. 906, 85 S.Ct. 885, 13 L.Ed.2d 794 (1965).

47 F.3d at 1249.

different.  Counsel's mistake *before trial* as to what he thought the Court would rule *at trial* had no

impact on the evidence that *was* presented at trial.  Put another way, there was no mistake by

counsel that allowed otherwise inadmissible testimony to come into evidence.  Thus, Petitioner

cannot establish prejudice proximately caused by the counsel's  mistake.[7]

### 5. Conflict of Interest

Next, Petitioner asserts that he was denied constitutionally effective assistance of counsel

because his attorney had a "conflict of interest."  Upon careful examination, Petitioner's "conflict of

interest" argument is simply a recasting of his ineffective assistance of counsel argument. In this

regard, Petitioner relies almost exclusively on counsel's mistaken belief that the FBI Form 302's

would be admissible at trial, arguing that there was a "conflict of interest" because counsel led

Petitioner to believe that the 302s would come into evidence and Petitioner spent a great amount of

time pouring over the 302s in search of inconsistencies and preparing for an impeachment defense.

See Pet. Mem. L. pp. 22-27. When the Court ruled that the 302s would not come into evidence,

Petitioner felt that counsel did not do enough to challenge the Court's ruling (such as by calling FBI

agents to see if the 302s were verbatim reports from the various witnesses). Id.  Petitioner argues

that a "conflict of interest" can be inferred because "the legal advice of appointed counsel resulted

in the complete 'abandonment' of a no-holds-barred cross-examination of the Government's

witnesses with the FD 302s [as Petitioner] had expected." Id. p. 27.

Petitioner's argument is specious at best. Petitioner fails to demonstrate any basis to

conclude that counsel labored under a conflict of interest, see e.g. Winkler v. Keane, 7 F.3d 304,

---

[7] Petitioner asserts that if he was properly advised of the inadmissibility of the Form 302s, he would have
accepted a plea deal. However, the Second Circuit has held that "a defendant's post conviction testimony that he would
have accepted the plea is insufficient to establish prejudice." United States v. Gordon, 156 F.3d 376, 381 (2d Cir. 1998).

307 (2d Cir. 1993)(holding that a contingency fee which gave counsel a disincentive to seek a plea agreement or seek information to put forth a defense to a lesser charge for his client created an actual conflict of interest); United States v. McLain, 823 F.2d 1457 (11th Cir. 1987)(finding an actual conflict of interest when counsel was under bribery investigation without the defendant's knowledge); United States v. Ellison, 798 F.2d 1102 (7th Cir. 1986)(actual conflict of interest existed when pursuit of the defendant's interests would have led to evidence of counsel's malpractice), and merely attempts to turn a failed trial strategy into a constitutional violation. Having presided over the trial, the Court finds absolutely no merit to this argument. Petitioner's counsel, like all attorneys in this case, performed zealously and advocated aggressively for his client within the bounds of professional competence. The Government's witnesses were cross-examined, and while there may have been disagreement between Petitioner and counsel on strategic decisions, there is no evidence that counsel labored under any conflict of interest. The claim, therefore, is dismissed.

### B.  Violation of the Speedy Trial Act

Petitioner next asserts that he was tried in violation of the Speedy Trial Act, 18 U.S.C. § 3161(c)(1), and that his appellate attorney was ineffective for failing to raise the issue on appeal. See Pet. Mem. L. p. 27.  The argument is without merit.  During the underlying case, the Court denied the same motion made by one of Petitioner's co-defendant. See Gov. ex. 2 at pp. 58-59.  Thus, even assuming that Petitioner raised the issue with appellate counsel,[8] it would not survive under the second prong of the Strickland standard. Further, to the extent that the claim is raised as an

---

[8] Petitioner's Memorandum of Law is not verified, and the Petition (which is verified) does not assert that he discussed the Speedy Trial Act issue with appellate counsel.  Rather, the Petition raises the Speedy Trial Act claim only as a substantive claim, not as part of the ineffective assistance of counsel claim.

independent substantive claim, see fn. 8, *supra*, it is procedurally barred because (1) it was not raised on direct appeal, and (2) Petitioner has failed to demonstrate either: (a) cause for failing to raise the issue, and prejudice resulting therefrom; or (b) his actual innocence. Rosario v. United States, 164 F.3d 729, 732 (2d Cir. 1998)(citing Douglas v. United States, 13 F.3d 43, 46 (2d Cir. 1993)); see Sweat v. United States, 2005 WL 3179672, at * 2 (N.D.N.Y. Nov. 29, 2005)(McAvoy, S.J.); Collins v. United States, 2005 WL 1705044, at *3 (N.D.N.Y. July 20, 2005)(McAvoy, S.J.).

### C. Blakely/Booker

Finally, Petitioner argues that he was denied his constitutional rights to a jury trial and due process because his sentence, based upon the United States Sentencing Guidelines, took into account facts that were not presented to the jury. He bases his argument on the holdings of Blakely v. Washington, 542 U.S. 296 (2004) and  United States v. Booker, 543  U.S. 220  (2005). However, neither Blakely nor Booker apply retroactively to cases on collateral review. See Guzman v. United States, 404 F.3d 139, 140 ("We now hold that Booker does not apply retroactively to cases on collateral review...."), 144 ("For the reasons stated above, Booker is not retroactive, *i.e.,* it does not apply to cases on collateral review where the defendant's conviction was final as of January 12, 2005, the date that Booker issued.")(2d Cir. 2005); Carmona v. United States, 390 F.3d 200, 202 (2d Cir. 2004)(Blakely not retroactively applicable to cases on collateral review); Garcia v. United States, No. 04-cv-0465, 2004 WL 1752588 (N.D.N.Y. Aug. 4, 2004)(McAvoy, S.J.)(Blakely does not apply retroactively to cases on collateral review.). Therefore, Petitioner's claim based upon Blakely and Booker is dismissed.

## IV. CONCLUSION

For the foregoing reasons, the instant petition seeking a writ of habeas corpus pursuant to 28

U.S.C. § 2255 is **DENIED,** and the action is **DISMISSED.**


**IT IS SO ORDERED**.

DATED:January 19,2006

Thomas J. McAvoy
Senior, U.S. District Judge